[No. 20887.  Department One.  March 19, 1928.]

ARTHUR W. MCCLURE, *Respondent,* v. ROBERT J. WILSON
*et al., Appellants.*[1]

[1] ADMIRALTY (4)—JURISDICTION—MARITIME TORT—INJURY WHILE
REPAIRING VESSEL. An injury to a workman engaged in repair-
ing an engine on a completed boat engaged in marine service
constitutes a maritime tort, and hence is not covered by the
provisions of the state industrial insurance act (TOLMAN, J.,
dissenting).

[2] COMPROMISE AND SETTLEMENT (1, 9)—FRAUD (17, 25)—ACTIONS
—BURDEN OF PROOF—QUESTION FOR JURY. Though the evidence
in an action for fraud in procuring a compromise of a claim
is conflicting, a question for the jury is presented, where the
party alleging fraud produces substantial evidence in support
of the charge.

[3] NEW TRIAL (13)—GROUNDS—ERROR IN INSTRUCTIONS. The action
of a trial court in granting a new trial is proper, where, in an
action for fraud in procuring a release of damages, the court
improperly charged the jury that it was the duty of plaintiff,
upon discovery of the fraud to notify the defendants and
rescind or return the contract.

Appeal from an order of the superior court for King
county, Ronald, J., entered July 5, 1927, granting a
new trial, after the verdict of a jury rendered in favor
of the defendants.  Affirmed.

*Peters & Powell* and *Robert H. Evans,* for appel-
lants.

*Wright, Froude, Allen & Hilen,* for respondent.

FRENCH, J.—Robert J. Wilson and wife are the
owners of a machine shop located across the street
from the waterfront in the city of Seattle. McClure was
the only employee of this shop working as a machinist's
helper, and had been so engaged for a few months when
a gasoline launch was brought to a small dock across

[1]Reported in 265 Pac. 485.

the street from the machine shop for the purpose of having certain repairs made to its engine. These repairs consisted generally of putting new fibers in the clutch and re-wiring the generator. The boat was an old craft, having been used some fifteen years, was about forty feet long, eight foot beam, was equipped with a 20-horsepower N. & S. engine, and had been used by the Puget Timber Company in moving logs and piling from boom to boom or from their booming grounds to the places where they were to be used.

On the day in question, plaintiff McClure, together with the defendant Robert J. Wilson, taking certain tools, went to the launch and found it necessary to open up the center block on the friction side of which the fibers are placed. In order to do this the defendant Wilson, taking a hammer and a narrow blunt chisel, began to drive on the center block with a view to loosening it on the shaft. A piece of steel was dislodged which struck McClure in the eye. McClure brought this action for personal injuries. The defendants answered, claiming that they were protected by the workmen's compensation act, and also that there had been a full settlement between the plaintiff and defendants. The jury returned a verdict for the defendants, a new trial was granted by the court solely upon the ground of error in instructions. The defendants have appealed and present three issues: First, that this action comes under the industrial insurance act; second, that there was no fraud established impeaching the settlement; and third, that no prejudicial error was committed in giving the instructions.

[1]  We have held that, where a workman is injured in assembling log booms, the work is of a purely local character, has no relation to navigation and commerce and that the workman's compensation act applies.

*Eclipse Mill Co. v. Department of Labor and Industries,* 141 Wash. 172, 251 Pac. 130.

We have also held that, where vessels are in process of construction, even though launched, if they had not yet entered upon navigation and commerce, because of the fact that they are not yet completed, the workman's compensation act applies. *Zahler v. Department of Labor and Industries,* 125 Wash. 410, 217 Pac. 55. And the same principle of law seems to have been applied by the Federal courts. *Grant-Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469. But it seems to be the holding of the Federal courts, particularly in the later decisions, that no state law can in any way infringe upon, affect or modify the rights of a workman who is injured by reason of a maritime tort.

In the case of *Robins Dry Dock & Repair Co. v. Dahl,* 266 U. S. 449, 69 L. Ed. 372, Dahl had been employed by the defendant company as a painter doing certain repair work on a ship, theretofore engaged in navigation and at the time lying in navigable waters near Brooklyn, N. Y. As in the instant case, the defendant had the contract for making the repairs, the workman was injured and the court said:

"The alleged tort was maritime, suffered by one doing repair work on board a completed vessel. The matter was not of mere local concern, as in *Grant-Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469, 476, 66 L. ed. 321, 324, 25 A. L. R. 1008, 42 Sup. Ct. Rep. 157, but had direct relation to navigation and commerce, as in *Great Lakes Dredge & Dock Co. v. Kierejewski,* 261 U. S. 479, 67 L. ed. 756, 43 Sup. Ct. Rep. 418. The rights and liabilities of the parties arose out of and depended upon the general maritime law, and could not be enlarged or impaired by the state statute. *Chelentis v. Luckenbach S. S. Co.,* 247 U. S. 372, 382, 62 L. ed. 1171, 1175, 38 Sup. Ct. Rep. 501; *Union Fish Co. v. Erickson,* 248 U. S. 308, 63 L. ed. 261, 39 Sup. Ct. Rep.

1121; *Knickerbocker Ice Co. v. Stewart*, 253 U. S. 149, 64 L. ed. 83, 11 A. L. R. 1145, 40 Sup. Ct. Rep. 438, 20 N. C. C. A. 635; *Carlisle Packing Co. v. Sandanger*, 259 U. S. 255, 259, 66 L. ed. 927, 42 Sup. Ct. Rep. 475. They would not have been different if the accident had occurred at San Francisco.''

The latest expression of the supreme court of the United States is found in the case of *Messel v. Foundation Co.*, 274 U. S. 427, 71 L. Ed. 1135. In that case Messel, a boiler maker's helper, employed by a local company, had been sent on board ship to assist in adding eight feet to the smoke stack of the steamer, and while engaged in such work was injured. The court held that the Louisiana workmen's compensation act could not apply under the Federal court decisions to the effect that this was a maritime tort, and that he was entitled to maintain his common law action in the state court against the employer. The court said:

''As Messel has resorted to the state court, and there is nothing to prevent his recovery in the state court except the Workman's Compensation Act, which is inapplicable to his case in view of our decisions, the judgment of the supreme court of Louisiana must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

''The principles applicable to Messel's recovery, should he have one, must be limited to those which the admiralty law of the United States prescribes, including the applicable section of the Federal Employers' Liability Act (June 5, 1920) incorporated in the maritime law by § 33, chap. 250, 41 Stat. at L. 988, 1007 U. S. C. title 46, § 688; *Robins Dry Dock & Repair Co. v. Dahl*, 266 U. S. 449, 69 L. ed. 372, 45 Sup. Ct. Rep. 157; *Great Lakes Dredge & Dock Co. v. Kierefewski*, 261 U. S. 479, 480, 67 L. ed. 756, 757, 43 Sup. Ct. Rep. 418; *Knickerbocker Ice Co. v. Stewart*, 253 U. S. 149, 64 L. ed. 834, 11 A. L. E. 1145, 40 Sup. Ct. Rep. 438, 20 N. C. C. A. 635; *The Osceola*, 189 U. S. 158, 47 L. ed. 760, 23 Sup. Ct. Rep. 483; *Panama R. Co. v.*

*Johnson,* 264 U. S. 375, 68 L. ed. 748, 44 Sup. Ct. Rep. 391; *Baltimore S. S. Co. v. Phillips,* decided May 16, 1927 [274 U. S. 316, *ante* 1069, 47 Sup. Ct. Rep. 600]; *Engel v. Davenport,* 271 U. S. 33, 70 L. ed. 813, 46 Sup. Ct. Rep. 410; *Panama R. Co. v. Vasquez,* 271 U. S. 557, 70 L. ed. 1085, 46 Sup. Ct. Rep. 596.''

So in this case, while it is true that the general employment of respondent was non-maritime, yet the work at which the parties were actually engaged at the time of the alleged injury, being as it was the repairing of the engine of a completed boat which had been engaged in navigation for a period of years, the tort, if any there was, was a maritime tort.

[2] The second question raised by appellant, namely, that respondents' proof failed to establish fraud impeaching the settlement between the parties, requires a review of the evidence.

The testimony is in sharp conflict, and while it is true that we have said that testimony to sustain a charge of fraud must be clear, cogent and convincing, in the final analysis, where the party alleging fraud has produced substantial evidence tending to establish it, it is for the jury to say whether he has met the burden which the law places upon him.

[3] The third assignment of error relates to the instructions of the court. The new trial was granted solely on the ground of error in instructions. Instruction No. 3 reads as follows:

''It is the duty of a person defrauded into making a contract to act with reasonable promptness after discovering the fraud, and if the plaintiff was induced by deceit and fraud, as claimed, to enter into the contract then it was his duty, upon discovery of the fraud, to notify the defendants thereof and to rescind or return the contract.

''If a party with knowledge of the fraud which induced him to enter into a contract remains quiet after

discovery of such fraud and before the consideration is paid and allows the other party to pay the consideration, then he cannot rescind the contract.

"Now if you shall find that the plaintiff signed said contract and if he has not satisfied you by clear and convincing testimony of fraud as charged, then you will go no further, but in such case, you will return a verdict for the defendants.

"But if you do find that he signed the contract and he has further satisfied you by clear and convincing testimony of the fraud charged, then the contract, in law, is of no validity and you will, in that case, consider and determine the question whether plaintiff's injury resulted from negligence on the part of the defendants, in which case the following instructions will be your guide."

In its memorandum opinion, the trial court said:

"Concerning the first instruction noticed in the written briefs, I think if I had instructed simply that it was the duty of a defrauded person to act with reasonable promptness, after discovering the fraud, and to announce his purpose and adhere to it, and to receive no further payments of consideration; but that if he sits silently, after such discovery, he cannot recover—no one could object.

"This is, in effect, what defendant's counsel argue the instructions given amount to; but I think it went further and told the jury that it was defendant's [plaintiff's] duty to 'rescind and return the contract.' The word 'rescind' is a legal conclusion and might mean a formal preliminary suit in court or a mere declaration of rescission and refusal to act further. The word went to the jury without explanation and with a likelihood of its having been construed to mean the bringing of a suit; while the phrase 'return said contract' might imply to the minds of the jurors the redelivery of the physical contract or the repayment of the consideration received thereunder. The use of the word 'rescind' without further explanation, at least was confusing, if not worse, while any implication the last phrase 'return said contract' might convey to the

jurors' minds was erroneous. I think the instruction put upon the plaintiff a duty which the law does not require, and was erroneous and prejudicial.''

We agree with the trial court that this instruction was erroneous for the reasons given. We think the action of the lower court in granting a new trial correct.

Judgment affirmed.

MACKINTOSH, C. J., PARKER, and MITCHELL, JJ., concur.

TOLMAN, J. (dissenting)—The boat upon which the accident occurred, being engaged only in booming operations and respondents employment being non-maritime in its nature, I believe that, under the Federal cases as well as our own, we should hold that the workmen's compensation act applies. I therefore dissent.